UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | |
| v. | NO. CR16-100RSL |
| BINGHAM FOX, | ORDER DENYING BINGHAM FOX'S MOTION FOR A NEW TRIAL PURSUANT TO FED. R. CRIM. P. 33 AND MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FED. R. CRIM. P. 29 |
| Defendant. | |

This matter comes before the Court on the motion of defendant Bingham Fox for a new trial pursuant to Fed. R. Crim. P. 33, Dkt. # 183, and defendant's motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29, Dkt. # 185. Having reviewed the memoranda and exhibits submitted by the parties, as well as the remainder of the record in this case,[1] and having heard oral argument on the motions, the Court denies both motions for the reasons that follow.

---

[1] Defendant's counsel moves for leave to withdraw and for substitution of new counsel on the grounds that new counsel could most effectively evaluate possible ineffective assistance of counsel claims, and should be permitted to submit a supplemental new trial motion on that basis after investigation. Dkt. # 184. The Court declines to appoint new counsel to litigate defendant's post-trial motions, but defense counsel will be permitted to withdraw after sentencing.

ORDER DENYING BINGHAM FOX'S
MOTIONS FOR A NEW TRIAL AND
FOR JUDGMENT OF ACQUITTAL - 1

## I. BACKGROUND

Defendant Bingham Fox was charged with one count of conspiracy to defraud the United States by violating the Clean Water Act and the Act to Prevent Pollution from Ships (under 18 U.S.C. § 371) and one count of Clean Water Act discharge of oils (under 33 U.S.C. § 1319(c)(2)(A), 33 U.S.C. § 1321(b)(3), 18 U.S.C. § 2, and 40 C.F.R. § 110.3). The government alleged that Bingham Fox and his son, Randall Fox, knowingly operated Bingham Fox's boat, the *F/V Native Sun*, without a functioning system to separate oily water from water, knowingly discharged oil into navigable waters in potentially harmful quantities, and conspired to conceal any visible oil by discharging detergent into the affected waters. Dkt. # 4 at 5.

Over the course of five days between March 21 and March 29, 2017, defendant was tried before a jury. On March 30, 2017, after deliberating for just under five hours, the jury found defendant not guilty of conspiracy but guilty of violating the Clean Water Act. Dkt. ## 173, 177.

On April 10, 2017, defendant filed this motion for a new trial pursuant to Fed. R. Crim. P. 33, on the grounds that the government committed prosecutorial misconduct at trial and that the evidence was insufficient to support his Clean Water Act conviction. Dkt. # 183. Defendant also moved for a judgment of acquittal on the same sufficiency grounds. Dkt. # 185. The government opposes both motions. Dkt. # 191.

## II. DISCUSSION

Federal Rule of Criminal Procedure 29(a) provides that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." The Court evaluates the sufficiency of the evidence independently. Fed. R. Crim. P. 29(a). The defendant may renew his motion for a judgment of acquittal within fourteen days after a guilty verdict is returned. Fed. R. Crim. P. 29(c)(1). When assessing a motion under

ORDER DENYING BINGHAM FOX'S
MOTIONS FOR A NEW TRIAL AND
FOR JUDGMENT OF ACQUITTAL - 2

Rule 29, the Court asks whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." The Court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal; it need not view the evidence in the light most favorable to the verdict, and it may weigh the evidence and independently evaluate the credibility of the witnesses. United States v. Alston, 974 F.2d 1206, 1211 (9th Cir. 1992). "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." Id. at 1211–12 (quoting United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980)).

Because the Court's analysis under Rule 33 is broader than its analysis under Rule 29, the Court first addresses defendant's Rule 33 motion. Finding no grounds to order a new trial even under Rule 33's more liberal standard, the Court accordingly denies defendant's Rule 29 motion, as well.

Pursuant to Rule 33, defendant requests a new trial on the following grounds: (1) the government committed prosecutorial misconduct, causing an unfair trial; (2) the weight of the evidence is against the verdict, as the government failed to prove the "knowledge" element of the Clean Water Act charge beyond a reasonable doubt; and (3) the interests of justice require the Court to grant a new trial. This order addresses each in turn.

**A.    Prosecutorial Misconduct**

Defendant argues that the government committed three separate kinds of prosecutorial

ORDER DENYING BINGHAM FOX'S
MOTIONS FOR A NEW TRIAL AND
FOR JUDGMENT OF ACQUITTAL - 3

misconduct in its closing argument.  Specifically, he claims that the government improperly shifted the burden of proof to defendant; that it misrepresented whether certain evidence existed; and that it misstated certain evidence in the record.  In evaluating allegations of prosecutorial misconduct, the Court asks whether the government's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Hein v. Sullivan, 601 F.3d 897, 912 (9th Cir. 2010) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)).  Factors to consider include whether the comment misstated the evidence, whether the Court admonished the jury to disregard the comment, whether the comment was invited by defense counsel in its summation, whether defense counsel had an adequate opportunity to rebut the comment, and the prominence of the comment in the context of the entire trial and the weight of the evidence.  Id. at 912–13.

        1.)    *The Waste-Disposal Receipts*

At trial, defendant argued that, rather than arranging to pump oily water overboard in violation of the Clean Water Act, he ordered the vessel's crew to store the oily water in barrels on board and then paid to dispose of it at a facility on shore.  To support this defense, defendant presented witness testimony and two waste-facility disposal receipts.  On cross-examination, defendant asserted that he had produced additional receipts to the government beyond the two he had introduced.

During the government's summation, however, the government asserted that "the government does not have these [additional] receipts."[2]  The government also asserted that

---

[2] The government mischaracterized defendant's testimony as claiming that defendant had sent the government "hundreds" of receipts, when defendant actually testified that he had sent around "fifty" receipts.  Additionally, when summarizing the receipts that defendant had produced, the government suggested that defendant had produced a fishing license receipt, when in fact the government had independently obtained that receipt directly from the licensing department.  While defendant argues that these misstatements constitute prosecutorial misconduct, the Court concludes that, while regrettable, they were "within the latitude permitted counsel in their closing arguments."  United States v. Parker, 549 F.2d 1217, 1222–23 (9th Cir. 1977).

ORDER DENYING BINGHAM FOX'S
MOTIONS FOR A NEW TRIAL AND
FOR JUDGMENT OF ACQUITTAL - 4

defendant had not disposed of all the oily water at the waste facility because defendant had only produced two receipts, and that if defendant had more receipts, "you would be hearing about them over and over again, because those receipts would be the first defense exhibit, and they'd be drilling them into your head." And, "you're not seeing those receipts for this disposal because those receipts don't exist, and the reason those receipts don't exist, ladies and gentlemen, is because this disposal was not happening."

Defendant argues that this line of closing argument impermissibly shifted the burden of proof to defendant, as it encouraged the jury to fault defendant for failing to prove his innocence. Of course, the government bears the burden of proving every element of the charged crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364 (1970). But the government is not responsible for disproving every possible counterfactual or defense theory in order to establish the defendant's guilt – only those defense theories that affirmatively negate an element of the crime. See Patterson v. New York, 432 U.S. 197, 206–07 (1979).

Here, the government's comment about the lack of receipts did not suggest that defendant was responsible for proving a defense that negated an element of the crime – in this case, the discharge of oily water into the sea. Rather, after the government presented evidence to meet its burden on that element, the government's comments permissibly urged the jury to look with skepticism on defendant's alternative explanation of where the oily water in the vessel's bilge had gone. See United States v. Vaandering, 50 F.3d 696, 701–02 (9th Cir. 1995) ("The prosecutor may comment on the defendant's failure to present exculpatory evidence . . . . [C]omments intended to highlight the weaknesses of a defendant's case do not shift the burden of proof to the defendant where the prosecutor does not argue that a failure to explain them adequately requires a guilty verdict . . . ."); see also Demirdjian v. Gipson, 832 F.3d 1060, 1071 (9th Cir. 2016); United States v. Wilkes, 662 F.3d 524, 541 (9th Cir. 2011). Moreover, both the government in closing and the Court's instructions to the jury reiterated the government's

ORDER DENYING BINGHAM FOX'S
MOTIONS FOR A NEW TRIAL AND
FOR JUDGMENT OF ACQUITTAL - 5

burden of proof, presumptively curing any confusion.

More troubling is the government's assertion that it "did not have the receipts" that defendant claimed to have sent it, a fact that was not in evidence. See Berger v. United States, 295 U.S. 78, 88 (1935) ("[A]ssertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none."); United States v. Prantil, 764 F.2d 548, 555–56 (9th Cir. 1985) ("The prosecutor's closing arguments illustrate the degree of actual prejudice that results when an advocate, through his direct participation in the events under litigation, can argue to the jury based on actual or perceived personal knowledge."). In briefing this motion, the parties dispute whether the government misrepresented the fact that it possessed two waste-disposal receipts from October and November 2013 – the government claims that these receipts did not demonstrate proper waste disposal "during the relevant time frame," Dkt. # 191 at 12,[3] while defendant claims that the government's failure to mention these receipts was deliberately misleading and improper. But even more important is that the government should not have represented in closing argument *any* facts that were not supported by evidence in the record.

The Court did, however, instruct the jury generally that counsel's closing arguments were not evidence – not only in its formal instructions at both the beginning and end of trial, but repeatedly throughout the proceedings; for example, the Court explained to the jurors that they were not permitted to take notes during opening and closing statements because the lawyers' statements were *not evidence*. See Donnelly v. DeChristoforo, 416 U.S. 637, 644 (9th Cir. 1974) ("Although some occurrences at trial may be too clearly prejudicial for such a curative instruction to mitigate their effect, the comment in this case is hardly of such character."). In the

---

[3] The government argues that these receipts were irrelevant under Federal Rule of Evidence 401 because they originated outside the charged time frame. The receipts might well be less probative than receipts of waste disposals *preceding* the Coast Guard's inspection of the *F/V Native Sun*, but they certainly would have cleared Rule 401's low bar for relevance.

ORDER DENYING BINGHAM FOX'S
MOTIONS FOR A NEW TRIAL AND
FOR JUDGMENT OF ACQUITTAL - 6

full context of the trial and the rest of the government's closing statement, which emphasized the government's burden and the specific evidence supporting each element of the crimes charged, the Court cannot say that the government's assertion "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Hein, 601 F.3d at 912–13 (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)). Accordingly, the Court concludes that these remarks did not rise to the level of prosecutorial misconduct in violation of due process.

2.) *The Blue Hose*

At trial, the government presented testimony from U.S. Coast Guard Lieutenant Lina Anderson, as well as photographs that Lt. Anderson took during the initial boarding and inspection of the *F/V Native Sun*. One of these photographs depicted a blue hose running over the side of the vessel and into the water. Lt. Anderson testified that the photograph appeared to capture "an effluent liquid, assuming water, with or without oil, it's unknown, coming out." Dkt. # 188 at 15. Later, Lt. Anderson testified that the blue hose was connected to a submersible pump in the bilge. Id. at 18.

On the U.S. Coast Guard's Photographic Evidence Sheet, however, the photograph is described as a "[p]hotograph of blue hose going overboard through a scupper on F/V Native Sun (O. N. 61148). The ripples in the water are caused by the constant flushing of the fish holds on to the deck and overboard through the scuppers, not effluent discharging from the bilge hose." Dkt. # 183-1 at 8.

In closing, the government displayed the photograph to the jury and, citing Lt. Anderson's testimony, represented that it depicted a "hose discharging in the harbor at four o'clock in the morning, at night." Dkt. # 188 at 140–41. The government used this photograph to rebut defendant's testimony that the vessel did not discharge while in port. Id. Defendant now argues that the government misrepresented the photograph, prejudicing defendant.

The government correctly points out that its closing argument was supported by

ORDER DENYING BINGHAM FOX'S
MOTIONS FOR A NEW TRIAL AND
FOR JUDGMENT OF ACQUITTAL - 7

1 Lt. Anderson's testimony that the blue hose was discharging from the bilge, and that defendant
2 had an opportunity at trial to cross-examine Lt. Anderson regarding whether the hose was
3 discharging or not, but failed to do so. Defendant does not argue that the government
4 deliberately elicited incorrect testimony from Lt. Anderson, or that the government failed to
5 disclose the contradictory Photographic Evidence Sheet in time for its use as impeachment
6 material at trial. Accordingly, because the government's description of the photograph was
7 consistent with the evidence presented at trial, the Court concludes that it was not misconduct.

        3.)    *The Oil-Water Separator and Oil Content Meter*

In closing, the government described a machine known as an "oily-water separator" and explained that it uses an "oil-content meter," though neither the machine nor a description of its function had been admitted as evidence. Dkt. # 188 at 124–25. Defense counsel objected to this line of argument, and the Court sustained the objection, admonishing the government that "[u]nless there is testimony to support this, counsel cannot provide it in closing argument," and instructed counsel not to discuss oily-water separators any further. Id. at 125.

Like the government's statement that it did not have any additional waste-facility disposal receipts, this line of argument was improper. See Berger, 295 U.S. at 88. But this error was not "too clearly prejudicial for . . . a curative instruction to mitigate [its] effect," DeChristoforo, 416 U.S. at 644, and in light of defense counsel's objection and the Court's explanation why the government's argument was improper, the government's statements did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process," Hein, 601 F.3d at 912.

The Court declines to order a new trial on prosecutorial misconduct grounds.

**B.  Sufficiency of the Evidence**

Defendant next asks the Court to order a new trial on the grounds that the evidence was insufficient to prove the knowledge element of the Clean Water Act charge beyond a reasonable

doubt. To prove a Clean Water Act violation, the government had to show beyond a reasonable doubt that defendant knowingly discharged oil or a hazardous substance into the sea, or directed others to do so, and that the defendant knew that the discharged substance was oil or a hazardous substance. See 33 U.S.C. §§ 1319(c)(2)(A), 1321(b)(3).

While defendant does not dispute that oily water was discharged from the *F/V Native Sun*, defendant argued at trial, and argues again in this motion, that he did not know that the discharged water contained oil; rather, he claims that he specifically instructed his crew *not* to discharge oil. As to government witness Christopher Harden, who testified that defendant directed the installation of submersible pumps to discharge the contents of the vessel's bilge and purchased detergents to disperse the sheen created by discharged oily water, defendant argues that Mr. Harden's testimony was sufficiently impeached and may not be considered. And as to the circumstantial evidence that defendant was aware that the discharged water was contaminated with oil, defendant claims that inferences from this evidence are only "reasonable speculation and not sufficient evidence." Dkt. # 183 at 12 (citing Newman v. Metrish, 543 F.3d 793, 796 (6th Cir. 2008)). Defendant does not discuss any of this circumstantial evidence with particularity.

The Court concludes that this is not a case where "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." Alston, 974 F.2d at 1211–12. While Mr. Harden's credibility was undermined somewhat by defense counsel's cross-examination, the same circumstantial evidence that defendant dismisses as "speculative" in fact serves to corroborate Mr. Harden's testimony on several crucial points. Numerous photographs document the substantial – and, by Lt. Anderson's account, unusual – amount of leaked oil evident inside the *F/V Native Sun*, including in its bilge. Testimony from a chemist at the Coast Guard Marine Safety Laboratory supports the inference that oily water from the vessel's bilge was sucked through a submersible pump and discharged overboard through the

ORDER DENYING BINGHAM FOX'S
MOTIONS FOR A NEW TRIAL AND
FOR JUDGMENT OF ACQUITTAL - 9

blue hose. Defendant's purchase of oil-absorbent pads and enzyme-based detergent constitutes circumstantial evidence of his awareness of oil contamination in that bilge water. So too the vessel's log book, which documents continuous problems with leaking oil in the engine room and which defendant regularly reviewed.

In sum, though defendant claims that he instructed the crew to pump from the bottom of the bilge so as to capture only water, circumstantial evidence supports the inference that defendant knew that the crew's efforts to mop up the oil were only partially successful, and in turn that defendant knew that the submersible pumps in the bilge were pumping overboard illegal quantities of oil emulsified in the bilge water. Accordingly, the Court is persuaded beyond a reasonable doubt that defendant knew that his vessel's bilge was contaminated with oil, and knew that oil was being pumped overboard along with the water from the bilge.[4]

**C.     Interests of Justice**

Lastly, defendant asks the Court to grant a new trial in the interests of justice. For all of the reasons detailed above, the Court is not persuaded that a serious miscarriage of justice may have occurred in this case. See Alston, 974 F.2d at 1211–12. The Court declines to order a new trial on those grounds.

### III.  CONCLUSION

For the all the foregoing reasons, defendant Bingham Fox's motion for a new trial (Dkt. # 183) and motion for judgment of acquittal (Dkt. # 185) are DENIED. Defense counsel Barry Flegenheimer's motion for leave to withdraw (Dkt. # 184) is DENIED, though counsel may renew his motion after sentencing. The government's motion to unseal defendant's financial affidavit (Dkt. # 195) is DENIED.

---

[4] It follows that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could well have found the essential elements of the crime beyond a reasonable doubt. See Jackson, 443 U.S. at 319. Thus, the evidence is sufficient to sustain defendant's conviction, and defendant's motion under Rule 29(c)(1) must be denied.

ORDER DENYING BINGHAM FOX'S
MOTIONS FOR A NEW TRIAL AND
FOR JUDGMENT OF ACQUITTAL - 10

SO ORDERED this 19th day of June, 2017.

*[signature]*

Robert S. Lasnik
United States District Judge

ORDER DENYING BINGHAM FOX'S
MOTIONS FOR A NEW TRIAL AND
FOR JUDGMENT OF ACQUITTAL - 11